versus Ashcroft. Ready to proceed? Yes, Your Honor. All right. Go ahead, please. Good morning. May it please the Court. My name is Vicky Dobrin, and I represent the petitioner, Chu Zhiying. Ms. Chu fears that if she's forced to return to China, she will be forcibly sterilized. Will you speak up a little bit louder if you can? She fears that she'll be forcibly sterilized because she violated China's one-child policy by having two children. Shortly after the birth of her second child, she and her husband received a notification from the authorities that they had violated the law in ordering them to be forcibly sterilized. Her husband fled the country shortly after that. She stayed behind because her children were young. However, in 2000, after narrowly escaping being arrested by family paying authorities, she fled the country. This is the heart of Ms. Chu's claim. However, in denying her application and finding that she was not credible, the board focused on alleged inconsistencies that we believe do not actually exist in the record, but at best are related to peripheral issues related to her claim. They're minor inconsistencies, and they're clearly not inconsistencies that demonstrate an attempt by her to enhance her claim of persecution. Well, there are, you know, there were a number of inconsistencies in her testimony, right? Well, no, we don't believe that there were. The board noted four to five inconsistencies. However, as we argued in our briefing, almost all of those inconsistencies don't actually exist if you review the record carefully. And, you know, they're clearly minor. They deal with issues such as where she lived, where her husband lived, and where her children lived. But those issues weren't in dispute in the case. Those issues don't go to the heart of the case at all. And as we pointed out in our briefing, the transcript in this case is replete with interpretation problems. What about all this hard-to-follow testimony about this sterilization certificate? Well, first of all, the board didn't rely on that as an inconsistency. It noted it in response to an argument that Ms. Chu's attorney made to the board. And they noted, the attorney argued that the immigration judge should have considered the fact that she made the scar on her stomach and that she submitted a photograph of that. And, you know, the judge erred in not considering that as part of her review of the record. And in response to that, they said, well, she reviewed the record, but it doesn't overcome the deficiencies. And then they noted that at her credible fear interview, she's alleged to have made this statement. However, if you review the record when she was questioned about this by her attorney, there's another example of the record being incomprehensible, because she responded, and it's at page... She responded. She did say they may have got... It's a page citation. Are you looking at something? Yes. Well... She responded to that testimony by saying that they may have gotten it wrong, and the board referenced that in its decision. But two parts of that, the response, were indiscernible from the record, and I need to locate that for you. But the board didn't rely on that inconsistency, which is more important. So that's not really before the court. And the fact of the matter is, she was never... The asylum officer didn't testify in her hearing. Her response was that they may have gotten it wrong, but also part of her response was indiscernible. And that is entirely a reasonable explanation, because at the credible fear interview, she, first of all, didn't sign any statement saying that it was all accurate, and she also could easily have said, and it was a false statement, that she presented false evidence of a sterilization, not a false certificate. So that's clearly a minor inconsistency or a translation error. And it also wasn't relied upon. But as far as the translation issue that I was discussing, we noted over 100 instances where the interpreter's responses were indiscernible, and that, coupled with the other aspects of his testimony or his translations that we noted, where there was on the record the parties, the judge, and the interpreter himself recognized that there were errors in the translation, and a lot of his answers that he did translate made no sense. And so in he versus Ashcroft, this court found that where, you know, possible inconsistencies or inconsistencies are potentially the result of, you know, faulty translation, that undermines the record that this court reviews. It undermines the basis for the negative credibility finding. And that's certainly the case here. Because the inconsistencies that the board cites are inconsistencies about I versus we, children versus daughter, in-laws versus mother-in-law, family versus mother. And, you know, clearly the inconsistencies, if they even exist, are possibly translation errors. And another thing that is significant about this case is that the board relied almost entirely on the testimony that Ms. Chu's husband provided in a different proceeding before a different judge several years earlier, and he was found credible. And so Ms. Chu was never confronted by the immigration judge or the government attorney about any alleged inconsistencies in the testimony. And recently this court issued a decision called Chen versus Ashcroft, which we cited in our 28-J letter. And in that decision, the court found that where, you know, there were errors in the translation, there were errors in the testimony, or you don't give a person a reasonable opportunity to respond to potentially inconsistent or unclear testimony, again, that undermines the reliability of the evidence that it can rely on. And it's cited to he versus Ashcroft for that proposition. And we believe that in this case, assuming that the court finds that there's any credence to any of the inconsistencies, Ms. Chu was never confronted with any of those at her hearing. What's the status of her husband? The last that we knew, he was appealing his case in the Second Circuit. But at his hearing, he was found credible. He was found credible. And he lost on the merits, or on the well-founded fear. But it's, you know, also one of the reasons he lost was because the court or the judge noted that his wife had continued to live there without problems, and obviously she did have problems subsequent to his hearing. You know, I'm not sure that that was true. I don't know whether he was being found credible at his own hearing helps or hurts this petitioner, because, again, some of his testimony was contradicted the petitioner's testimony here, right? Actually, it didn't. I mean, they both consistently testified about how the authorities found out that his wife was pregnant. They both consistently testified about where they went to live when she was four to five months pregnant. They both consistently testified about where they went to live after her daughter was born. And they were consistent in testifying about, well, they weren't questioned about where their children lived. That part of the testimony is the only part that's slightly unclear. But, again, because it's possibly the result of translation errors, because they were never questioned about it, neither of them were confronted with it. And he was specifically available to testify, but there was an off-the-record conversation in which the immigration judge told the party she was going to deny the case, but didn't summarize that for the record. He never testified. And so for that reason, it's wholly inappropriate for the board or the adjudicator to rely on these alleged inconsistencies. And I'd like to reserve my time. Thank you. I do have one question. Are they still married? Yes, they are. And is she 46 years old? I believe she is. Is she of childbearing age? Were they likely to sterilize her? I mean, she certainly still could have children. And her children now are about 21 and 16? I'm not sure that her ñ it's 1983 and 89. So that's about right. Thank you. Thank you. May it please the Court, my name is Edward Durant. I represent the United States. Petitioner's credibility or negative credibility determination was supported by substantial evidence. The board adopted and affirmed the 40-page decision of the immigration judge. In doing so, it made some modifications to that. Thus, according to the law of this circuit, this Court should review not only the oral decision of the immigration judge, but also the four-page decision of the Board of Immigration Appeals. Primarily, the board gave four to five reasons why Mrs. Key was not credible. The first was that neither she nor her husband had any consistency as to where their two children were during the years where she was allegedly being persecuted. On two occasions, Mrs. Key said that her children were with her parents by my village. Then she modified her story and said, no, my son is with me, my daughter is with my parents by my village. However, that is completely different to Mr. Lin's testimony that everyone in the family, including the children, lived in Fuzhou City. There were no indications... Go to the heart of her claim. Yes, Your Honor, because her, essentially her claim is she's being persecuted because she has two children. If she doesn't know, or her family doesn't know, that she has enough to live with her two children at the same time when she was being persecuted, this might go to the... It was a threat of sterilization, which is what I thought was her... It was a threat of forced sterilization, Your Honor. And I think if she had her two children with her at the time and carried them with her, and they were with her all the time, she would make herself a more likely candidate if that were, in fact, the practice. But, again, the... Do you doubt that they don't enforce... China doesn't enforce its population control program? I've read the State Department reports. I understand that not only are one family children, or children of one family becoming an exception, the government denounces any type of forced sterilization. This may occur in some of the areas, but apparently the Chinese government is... Apparently the enforcement policy differs from province to province, doesn't it? That's correct, Your Honor. That's my understanding of how things work in China. One of the problems in this case, you know, and as Dobrin alluded to it, is that apparently there was an interpreter who was a fairly competent, seems like, you know, I mean, which is maybe not real untypical of what happens in an immigration court, but a lot of the... You know, it's hard to trust in a lot of the transcript because of the translation problems, and don't we have to give some leeway to the petitioner because of that? No, Your Honor. The government would argue that the interpreter was indeed competent. Many of the problems could be... You can make the argument that Mrs. Qi was talking while he wasn't. There's at least five instances in the record where the judge has to tell her to keep quiet. Additionally, the areas where the board found her not credible, there are no indiscernibles. There are a lot of indiscernibles in the record, but none to those core areas that the government has seen. In addition, the petitioner has not stated what was prevented from coming out, where the interpreter screwed up. She hasn't said what didn't come out, what should have come out. So the court is left to wonder what, if anything, went wrong. In addition, she never made this argument below. In her brief to the board in a clause, she opines that perhaps it could be her problems could be the cause of interpretation problems, but that is up to question. That's in the same sentences where she admits that she did overgeneralize during the immigration hearing. So there was no notice to the board that she actually felt that the interpreter wasn't competent. If she did feel that the interpreter was competent, she should have raised this issue. A clause in a brief that doesn't really get to the point and leaves it up in the air isn't really fair to the board in that case. But there were four reasons why the board did find her not credible. The second issue is the fact that she did admit to an immigration officer that she had a sterilization certificate. At her hearing, she said that the immigration officer probably got it wrong. However, if the court would look at that interview, she was represented by counsel, she understood the interpreter, she read it and understood it. This, again, would go to her credibility because she never mentioned this at her immigration hearing. There's also inconsistencies as to how Mrs. Key and Mr. Lynn said that the authorities found out about them. Now, the petitioner in her brief has made a very reasonable argument that the board and judge didn't do enough investigation. Mr. Lynn said that they were spotted, Mrs. Key said that the authorities went and reviewed the records, and that's how they found out. What difference does it make how they found out? Whether they spotted her and said, oh, there's Mrs. Lee. Or they looked through all the records and said, aha, this is her second child. What difference does it make to the heart of her claim that she's fearful of being subjected to sterilization? Your Honor, I believe it would go to the amount of pursuit that the authorities would give them. Are they just going and checking records, or are they physically showing up and hunting them down? It would go to the level of pursuit of the Chinese authorities, and therefore to the heart of her claim, Your Honor. But in any event, she has offered a reasonable interpretation to the facts. However, this Court must find that the board and the immigration judge's facts were fine unless they're compelled to conclude to the contrary. I.e., no other result. Again, her argument is reasonable, but it doesn't overcome that burden. The fourth reason that the board relied on was that they said that she submitted an altered document. They never said it was fraudulent, but then again, this is a document allegedly of her daughter's birth certificate. It doesn't have her location, where she was born. There's overwritten characters. And in addition, the ages of the parents are incorrect. Again, the board never said that's fraudulent, but here we have a woman who's saying she's persecuted because of two kids, and there's something wrong with the birth certificate. Again, it's one more reason why she's not credible. The immigration judge gave other reasons why Mrs. Key was not credible. The board did not address them. For example, the immigration judge did not... The board never found that she didn't have two children. So what difference does the birth certificate make? If that document is unreliable, if there's something about it that's not right, and it goes to her second child, it further weakens her claim. Well, how does it weaken it? If there's no contention that she didn't have the two children, what difference does the birth certificate make? It's just a potentially altered document. Again, as I said in the brief, it's not the nail in the coffin, but it's one other reason, Your Honor, that would undermine her credibility. The immigration judge gave other reasons. For example, he didn't... It's incredible that after 10 years of living in Fouzou, the moment that her mother-in-law dies, the immigration officials have set up sort of a sting to come get her, and then she sprints out and is able to escape. It's just incredible based on the fact that she lived relatively openly with these authorities potentially pursuing her for 10 years. And there's another question as to whether or not she allegedly received notice of sterilizations. These are just other examples that the immigration judge cited. However, as this Court has said in Wang v. INS, as long as one of the identified grounds is supported by substantial evidence, this Court must uphold the finding and decision of the Board of Immigration Appeals. In conclusion, the government would state that the findings are upheld by substantial evidence, they are material, and would ask that this Court dismiss the petition for review and affirm the decision of the Board of Immigration Appeals. Is it the government's position that she could be removed to a province or she could move to a province where forced sterilization is not enforced? I don't know if that question was addressed below. It would appear from the State Department documents that the sterilization program, if it's enforced. That's not one of the government's arguments. Not at this point, Your Honor. It's on credibility. Thank you very much. Thank you, Mr. Rubato. Judge Tashima, I found the site, it's at page 49 of the administrative record, regarding what she said to the officer at her hearing regarding the certificate. It says, at that time I was told the immigration officer who was indiscernible and I used some fake indiscernible. I didn't say anything about the documents. They probably got it wrong. Again, the record's indiscernible as she attempts to address an inconsistency that the Board didn't rely on. We're clearly reviewing the Board's decision. It found exceptions. It said with inconsequential exceptions we hereby modify and add this addenda. They didn't adopt the judge's decision. The judge found that the petitioner's husband was internally inconsistent. That was one of her findings. An immigration judge who heard the case found that he was credible. We're reviewing the Board's decision. And as far as country conditions, I think both parties agree that the appropriate course would be remand at this point if the Board, I mean if the Court reverses the Board's credibility finding. And the officer documents that, again, the age of the father is irrelevant to the claim. That was the only overriding on the document. Okay. Thank you. Thank both counsel. This case is submitted for decision. The next case on the argument calendar is Mendio Laza, Untiveros v. Ashcroft.
judges: Hug, Tashima, Paez